IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| RONALD RAYMOND GREEN, PRO SE, § <br> also known as RONALD R. GREEN, § <br> TDCJ-CID No. 1302189, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> BRAD LIVINGSTON, STEPHEN WILLIAM, § <br> UNNAMED DENTIST, and § <br> BRIAN TUCKER, § <br> § <br> Defendants. § | 2:14-CV-0243 |

**REPORT AND RECOMMENDATION**

Plaintiff RONALD RAYMOND GREEN, acting *pro se* and while a prisoner confined in the Texas Department of Criminal Justice, Institutional Division, sues the above-referenced defendants pursuant to Title 42, United States Code, section 1983 and has been granted permission to proceed in accordance with Title 28, United States Code, section 1915.

Plaintiff claims he suffered a violation of the Eighth Amendment prohibition against cruel and unusual punishment because the defendants have been deliberately indifferent to his serious medical needs by failing to provide him a set of dentures and by failing to remove tooth roots that remain after the extraction of all his teeth.

Plaintiff requests the tooth roots be removed and that he be provided a full set of dentures[1].

---

[1] The Court notes that, in his June 18, 2015 Response to the *Martinez* Report, plaintiff includes a section titled "Damages," in which he requests $100.00 per day since January 15, 2013 "until [his] gums are fixed."

On April 29, 2015, the Texas Attorney General, acting as *Amicus Curiae* and in response to an order of the Court, submitted a *Martinez*[2] Report concerning plaintiff's claims. Plaintiff filed his response on June 18, 2015.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[3], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[4].

The Magistrate Judge has reviewed plaintiff's pleadings, the *Martinez* report, and plaintiff's response to determine if his claims should proceed further or whether they are subject to dismissal.

---

[2] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

[3] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see, Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[4] *Cf, Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

## THE LAW AND ANALYSIS

A copy of the TDCJ-CID policy governing the provision of dental prosthetics, including full or partial dentures, has been produced as part of the *Martinez* report at Exhibit B, 99–105. Policy No. E-36.4 of the Correctional Health Care Policy Manual became effective March 8, 2013. The policy provides that dental prosthetics are to be provided when determined to be medically necessary; that is, when the health of the patient would otherwise be adversely affected[5].

By his complaint, plaintiff alleges he was diagnosed with cancer of the throat, nasal passage, and brain and needed treatment with radiation and chemotherapy. He states doctors informed him all his teeth would need to be removed for the radiation treatment. Plaintiff says because TDCJ-CID policy was that dentures would not be provided for inmates, he elected to accept chemotherapy, but refused consent for the radiation treatment so he could keep his teeth[6]. Plaintiff says he began chemotherapy on or about May 13, 2012 and was later informed the chemotherapy was not effective.

Plaintiff alleges he received a copy of TDCJ's Dental Orientation Services policy, H.S.A.-97 (Rev. 01-01-2012), and that it stated Priority 3 needs are limited to the documented medical necessity for complete or partial dentures. Nevertheless, plaintiff says he was informed by unidentified doctors and a dentist that he would be able to receive dentures under that policy.

---

[5]Policy No. E-36.4 provides that patients who have fewer than seven occluding posterior teeth and have complaints regarding mastication should be reviewed. Such patients are referred to a physician or midlevel provider for a thorough rieview of the patient's medical history and an assessment of his nutritional status. If the physician or midlevel provider determines the patient's nutritional status is compromised, special diets, such as a mechanical soft diet and nutritional supplementation should be considered. A follow-up evaluation is conducted to assess the effectiveness of that diet, at which time dental prosthesis for patients with compromised nutritional status may be considered. See Exhibit B to the *Martinez* report at 99.

[6]Plaintiff's December 2, 2014 Complaint at page 1 of his attachment to the Statement of Facts.

Plaintiff states he then consented to the removal of all of his teeth and underwent radiation treatment. He says that, after he teeth were pulled, he was informed by the dentist that he would not be provided with dentures. Plaintiff states he has a hernia and, therefore, must chew his food thoroughly in order to swallow without pain. Plaintiff claims he has suffered deliberate indifference to his serious medical need for dentures which will help him maintain his health so he can continue receiving radiation medical treatment. By his Step 2 grievance no. 2013170080, attached to plaintiff's original complaint, plaintiff informed prison officials he had lost over 100 pounds due to difficulty chewing his food without dentures. By his December 19, 2014 response to the Court's Questionnaire, plaintiff pled under oath that he had lost 50 pounds in about 90 days, due to the absence of dentures[7]. Plaintiff has not specified the months the weight loss occurred.

Review of plaintiff's medical records, produced with the *Martinez* report, reveals plaintiff refused dental surgery on June 11, 2012 (Ex.A-27), but consented to full surgical extraction of all his teeth on January 15, 2013 (Ex. A-1). In June and July of 2013, plaintiff refused nutritional supplements and refused feedings through a Peg tube which had been prescribed to address or prevent nutritional deficiencies at that time (Ex.A-37 to A-44).

Medical records show plaintiff is 76 inches tall. His weight was shown in his medical records as follows:

| Date | Weight |
|---|---|
| July 17, 2013 | 195 lbs. (Ex. A-2) |
| July 19, 2013 | 200 lbs. (Ex. A-5) |
| Nov. 20, 2013 | 238 lbs. (Ex. A-13) |
| Dec. 18, 2013 | 240 lbs. (Ex. A-18) |
| Jan. 2, 2014 | 262 lbs. (Ex. A-23) |
| Jan. 4, 2014 | 260 lbs. (Ex. A-23) |

---

[7]Plaintiff's December 19, 2014 Questionnaire response at Question no. 11.

```
Jan. 16, 2014      257 lbs. (Ex. A-23)
Jan. 22, 2014      257 lbs. (Ex. A-23)
Jan. 27, 2014      257 lbs. (Ex. A-23)
Jan. 28, 2014      262 lbs. (Ex. A-23)
Feb. 5, 2014       260 lbs. (Ex. A-23)
Feb. 11, 2014      258 lbs. (Ex. A-23)
March 12, 2014     266 lbs. (Ex. A-23)
March 27, 2014     272 lbs. (Ex. A-23)
May 1, 2014        273 lbs. (Ex. A-23)
May 14, 2014       273 lbs. (Ex. A-23)
July 8, 2014       278 lbs. (Ex. A-20)
```

Plaintiff was given a slow eating pass on May 22, 2014 which was to be effective for 365 days (Ex. A-46).

In his June 18, 2015 response to the *Martinez* report, plaintiff appears to abandon any argument that he had a priority 3 need (a documented medical need) for dentures, and simply argues he falls under special circumstances; that is, he ought be to provided dentures because his teeth were removed to allow his cancer treatment, and not because he failed to take proper dental care. In essence, plaintiff is arguing he should be exempt from the medical necessity policy for dentures because his teeth were not lost due to blameworthy behavior and that other inmates, who do not practice proper dental care are less deserving of dentures than is plaintiff. This argument misses the point.

The Court must determine whether plaintiff has alleged facts to support a claim of deliberate indifference to a serious medical need. The reason plaintiff's teeth were pulled does not affect whether he has a serious medical need for dentures.

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156

(1992). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). However, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension, *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991), and "negligent medical care does not constitute a valid section 1983 claim," *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo,* 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982).

Plaintiff does not claim he has been refused an evaluation to determine whether he has a medical need for dentures and does not argue that any medical care provider has determined dentures were medically necessary. Review of plaintiff's medical records does not contain any indication that the lack of dentures is preventing him from getting sufficient nutrition or that there

is any other basis for a determination that the lack of dentures has or will create a substantial risk of serious harm to plaintiff's health or safety.

Plaintiff has not alleged facts showing his need for dentures is a serious medical need, *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992), or that his requests were met with deliberate indifference on the part of the defendants.

Plaintiff also alleges that some tooth roots remain from the removal of his teeth and that those roots are very painful, but TDCJ refuses to have those roots pulled. Plaintiff states Dr. Hughes, a dentist, told him the roots cannot be pulled for fear of infection but that if need be he will try to pull them[8]. Nevertheless, despite plaintiff's repeated requests, TDCJ dentists have failed or refused to pull the tooth roots.

Plaintiff's medical records show that, on January 31, 2014, he was seen in the dental clinic for complains of pain resulting from bone protruding through his gumline. On examination, Dr. Hughes, found 2 retained roots. Doctor Hughes noted plaintiff had a history of oral cancer with radiation therapy. His treatment plan was to advise plaintiff not to masticate on the painful area and to wait and see if the area became better. Plaintiff was instructed that if swelling or pus developed, plaintiff was to come to the clinic as a walk-in and they would treat him immediately. Doctor Hughes stated he wanted some time to research plaintiff's case. (Ex.A-54).

Plaintiff's records show Dr. Hughes consulted with Dr. Tucker and a Dr. Whitten. Their treatment plan was to monitor submerged roots with periodic x-ray unless surgical removal

---

[8] Plaintiff's December 19, 2014 Questionnaire response at Question no. 10.

became necessary. (Ex. A-55). On subsequent examination September 3, 2014, for complaints of tenderness, Dr. Hughes noted there was no redness, swelling, or infection (Ex. A-57).

While plaintiff makes clear his disagreement with the medical judgment of Doctors Hughes, Tucker, and Whitten, this disagreement will not support a claim of deliberate indifference under section 1983. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The record demonstrates his complaints have been carefully considered by his dental caregivers and they have exercised medical judgment in their response, taking into consideration plaintiff's history of oral cancer and any possible complications that could arise from extraction of the roots. As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo,* 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982).

## CONCLUSION

The standard of "[d]eliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). While plaintiff's desire for dentures is not unreasonable and his prison life might be made more tolerable if he were able to obtain them, such is not the issue. Instead, to show a constitutional deprivation, plaintiff must show deliberate indifference to a serious medical need. Consequently, even if defendants could treat plaintiff as he wishes, and the Court does not make any determination in that respect, the failure to do so, under the facts of this case, does not constitute deliberate indifference to plaintiff's serious medical need. Plaintiff's dissatisfaction with the care he received from the defendants and his feeling that more should have been done or should now be

done to treat his complaints does not elevate his claim to one of constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

For the reasons set forth above and pursuant to Title 28, United States Code, section 1915(e)(2) and Title 42, United States Code, section 1997e(c)(1), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Complaint filed pursuant to Title 42, United States Code, Section 1983, by plaintiff RONALD RAYMOND GREEN be DISMISSED WITH PREJUDICE AS FRIVOLOUS AND FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

It is the further RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Court decline to exercise pendent jurisdiction over plaintiff's state law tort claims, if any, and that such claims be DISMISSED WITHOUT PREJUDICE.

The United States District Clerk shall mail a copy of this Report and Recommendation to plaintiff and to each attorney of record by first class mail.

IT IS SO RECOMMENDED.

ENTERED THIS 15th DAY OF JANUARY 2016.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


* <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections

is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).